RICHARD JACKSON, Plaintiff-Appellee, v. THE DEPARTMENT OF LA-
BOR, Board of Review, Defendant-Appellant (Ramco Heavy Haulers,
Defendant).

Fourth District   No. 4—87—0559

Opinion filed March 3, 1988.—Rehearing denied April 25, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Diane Curry-Grapsas, Assistant Attorney General, of Chicago, of counsel), for appellant.

Gustine & Theivagt, Ltd., of Carrollton (Charles E. Theivagt, of counsel), for appellee.

JUSTICE SPITZ delivered the opinion of the court:

Plaintiff Richard Jackson worked for defendant Ramco Heavy Haulers in Clinton, Oklahoma, as an oil field swamper for drilling rigs from October 1, 1982, through November 3, 1982. On November 4, 1982, plaintiff was discharged after he failed to report to work for five consecutive days. On November 29, 1982, plaintiff filed a claim for unemployment compensation with the Illinois Department of Unemployment Insurance. On December 21, 1982, the claims adjudicator determined that plaintiff was ineligible to receive unemployment insurance benefits. The claims adjudicator found that plaintiff was discharged from his employment because he did not report in person to see if work was available and that the defendant's company policy required its employees to report in person daily. Further, the adjudicator found that plaintiff's conduct was within his control to avoid and that it adversely affected his employer's interest. Plaintiff filed a notice of reconsideration and appeal on December 29, 1982.

On January 11, 1983, a hearing was held before a referee at which the plaintiff appeared *pro se* and testified. The defendant employer did not appear. The plaintiff testified that he worked for defendant between October 1, 1982, and November 4, 1982, in Clinton, Oklahoma. Plaintiff was designated a swamper for moving drill-

ing rigs. Plaintiff stated that he was hired to work "as needed" seven days a week. To find out if he was needed, plaintiff and others were required to appear at the Clinton office every morning at 7 a.m. Plaintiff further stated that if he had not been assigned to work by 9 a.m. he drove home. Plaintiff testified that he appeared every morning for the first three to four weeks of his employment with the defendant. Thereafter, he began to call to see if work was available to save the expense of driving. The plaintiff testified that it was not economically feasible for him to drive 35 miles to work every day and then be sent home because no work was available, so that was why he began to call the office to check on the availability of work. Plaintiff admitted he did not seek permission from his employer to telephone the office rather than appear in person, nor did he explain his problem to his employer. Plaintiff further testified that after calling in but failing to report to work for five consecutive days, he was advised by the paycheck disburser that he had been fired.

The defendant submitted a written statement in response to plaintiff's claim. The response stated that plaintiff would not show up for work and was fired one day later. It further stated that plaintiff was aware that he was supposed to report to work between 7 and 7:30 a.m. every morning and that this was company policy. The report also stated that plaintiff "would call in but never show up," when a job was called "you couldn't get a hold of him," and that he was not dependable. The statement was signed "Kathy Drier, Office," and was sent from defendant's Hennessey, Oklahoma, office.

After considering the evidence and the testimony presented at the administrative hearing, the referee found that the plaintiff was required to report to the defendant's jobsite each day between 7 and 7:30 a.m. to see if work was available but that on several occasions plaintiff called instead of reporting as required. The referee further found that plaintiff never talked with his employer about calling instead of reporting in person. The referee concluded that "[t]he claimant knew that he was supposed to report in person to his job site each and every day at a specified hour for work. He failed to do as required and was discharged." Thus, the referee affirmed the determination of the claims adjudicator that plaintiff was discharged for work-related misconduct, and therefore, was disqualified to receive unemployment benefits.

On January 26, 1983, plaintiff appealed to the defendant Board of Review (Board). On June 16, 1983, the Board affirmed the referee's decision. Specifically, the Board found:

"The evidence established that the claimant did not report to

work for five consecutive days despite the fact that he knew that the employer required him to do so. The claimant made no attempt to explain his problems to his supervisor and he knew, or would reasonably be expected to know that failing to report for work for five days would seriously jeopardize his job tenure."

Based on these findings the Board concluded that the plaintiff was discharged for misconduct connected with his work.

On July 13, 1983, the plaintiff filed a complaint for administrative review in the circuit court of Greene County. On September 12, 1983, defendant filed a motion for judicial notice of the stay in the United States Bankruptcy Court for the Western District of Oklahoma (case No. 83—00529—B), resulting from an involuntary petition filed by defendant's creditors. The stay was allowed on September 12, 1983. The cause was then reactivated in 1987 and on July 15, 1987, a hearing was held on plaintiff's complaint for administrative review. At that time, plaintiff filed an "Affidavit of Witness" in open court and moved orally to amend his complaint to add newly discovered evidence as a basis for remand to the Illinois Department of Unemployment Insurance.

The affidavit was from Marvin Bailey, a former employee of defendant who worked out of the Clinton, Oklahoma, office from approximately April 1, 1981, through December 31, 1982. The affiant stated that defendant had offices at Clinton, Oklahoma, and at Hennessey, Oklahoma, 150 miles from Clinton. The affiant stated that Kathy Drier was a secretary for defendant at the Hennessey, Oklahoma, office and he could recall no occasion on which she was assigned to the Clinton, Oklahoma, office during December 1981 through December 31, 1982. The affiant further stated that during the last six months of 1982 defendant "idled practically all of its oil well department because of slack work," and rather than lay off employees, the defendant assigned work as it became available. He denied that defendant had a stated employment policy that all employees appear personally at the Clinton office each morning for assignment. The affiant also stated that on many occasions he phoned in to determine if work was available but was never discharged. The affiant stated that he terminated his employment with defendant on December 31, 1982, because the work was "too slack."

Plaintiff then argued that the affidavit demonstrated that defendant's response, signed by Kathy Drier and relied upon by the referee, was hearsay. Over defendants' objections, the circuit court admitted plaintiff's "Affidavit of Witness" for the "sole purpose of showing

that the material evidence relied on by the [hearing] examiner, in making his findings was hearsay." Following the hearing, the circuit court reversed the decision of the Board of Review, finding that it was based on hearsay evidence and against the manifest weight of the evidence.

The Board now appeals.

The Board contends on appeal that the circuit court's decision must be reversed because the court erroneously admitted evidence which was outside the administrative record and because the Board's decision that plaintiff was ineligible to receive unemployment compensation was not against the manifest weight of the evidence. We agree.

In the instant case, plaintiff filed a claim for unemployment compensation under the provisions of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 300 *et seq.*). A claims adjudicator, referee and ultimately the Board of Review all found that plaintiff was discharged for misconduct connected with his work under section 602A of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 432) and was therefore ineligible for benefits.

Section 1100 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 520) provides in relevant part:

"Review by the courts of decisions on benefits. Any decision of the Board of Review *** shall be reviewable only under and in accordance with the provisions of the Administrative Review Law [(Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*)], provided that judicial review thereof shall be permitted only after any party claiming to be aggrieved thereby has exhausted his administrative remedies as provided by this Act. *** The provisions of the Administrative Review Law, and all amendments and modifications thereof, and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the *** Board of Review hereunder."

A court's scope of review of an administrative agency's decision is set forth in section 3—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 3—110) as follows:

"Every action to review any final administrative decision shall be heard and determined by the court with all convenient speed. The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings

and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct."

■ A reviewing court cannot reweigh the evidence, make independent determinations of the facts or substitute its judgment for that of the agency even if it believes that the opposite conclusion might be reasonable. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 475 N.E.2d 879; *General Electric Co. v. Fair Employment Practices Comm'n* (1976), 38 Ill. App. 3d 967, 349 N.E.2d 553; *Okino v. Department of Corrections* (1980), 84 Ill. App. 3d 1084, 405 N.E.2d 1369.) Its function is limited to ascertaining whether the administrative agency's findings and decision are against the manifest weight of the evidence. (*Jackson*, 105 Ill. 2d at 508, 475 N.E.2d at 885; *Nendza v. Board of Review* (1982), 105 Ill. App. 3d 437, 434 N.E.2d 470.) To reverse an agency's decision as against the manifest weight of the evidence, a court must conclude that " 'all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous [citations], and that the opposite conclusion is clearly evident.' " (*O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 653, 456 N.E.2d 998, 1002, quoting *Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 1023, 349 N.E.2d 504, 508.) It is not sufficient that there are "[m]ere conflicts in testimony" (*Altman v. Board of Fire & Police Commissioners* (1982), 110 Ill. App. 3d 282, 284, 442 N.E.2d 305, 306) or that an opposite conclusion might be reasonable (*Knop v. Department of Registration & Education* (1981), 96 Ill. App. 3d 1067, 421 N.E.2d 1091). As the weight of the evidence and credibility of the witnesses are within the province of the Board (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 475 N.E.2d 879), there need only be some competent evidence in the record to support its findings (*Greene v. Board of Election Commissioners* (1983), 112 Ill. App. 3d 862, 445 N.E.2d 1337).

■ In view of the aforementioned principles and upon consideration of the record, we conclude that the circuit court's decision must be reversed. First, the circuit court improperly heard new evidence in opposition to the Board's determination. As indicated earlier, the circuit court considered plaintiff's "Affidavit of Witness," which was not contained in the administrative record. After reviewing the affidavit and hearing plaintiff's argument in that regard, the circuit court admitted the document in evidence. The court qualified its decision by stating that the affidavit was admitted for the "sole purpose of showing that the material evidence relied on by the [referee] in making his findings was hearsay." Nevertheless, this was improper. As earlier

stated, section 3—110 of the Code of Civil Procedure provides "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the [reviewing] court." (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) Furthermore, courts have held that upon administrative review, the reviewing court is limited to considering only the evidence submitted in the administrative hearing and it may not hear further evidence or conduct a hearing *de novo.* (*Pipe Trades, Inc. v. Rauch* (1954), 2 Ill. 2d 278, 118 N.E.2d 319; *Tri-America Oil Co. v. Department of Revenue* (1982), 117 Ill. App. 3d 774, 454 N.E.2d 1, *aff'd* (1984), 102 Ill. 2d 234, 464 N.E.2d 1076.) Further, parties are not permitted to supplement the administrative record on appeal to provide new or additional evidence. (*Village of Western Springs v. Pollution Control Board* (1982), 107 Ill. App. 3d 864, 438 N.E.2d 458.) Accordingly, as the circuit court was "expressly forbidden to go outside the record in rendering a decision," its decision must be reversed. *Pisano v. Giordano* (1982), 106 Ill. App. 3d 138, 140, 435 N.E.2d 899, 901.

■■ Next, we do not believe the Board's decision was against the manifest weight of the evidence. The circuit court reversed the Board's decision, finding that it was based on hearsay evidence and was against the manifest weight of the evidence. The court further found "that the facts tend more to support a finding that the plaintiff was a victim of widespread unemployment in a depressed industry, just the sort of thing unemployment compensation is supposed to cover."

Initially, we point out that the supreme court has held: "It is well established that when hearsay evidence is admitted without an objection, it is to be considered and given its natural probative effect." (See *Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 508, 475 N.E.2d 879, 883 (and cases cited therein).) The *Jackson* court noted that the hearsay evidence rule applies to the administrative proceedings under the Unemployment Insurance Act, but hearsay evidence that is admitted without objection may be considered by the administrative agency and by the courts on review. In the case at bar, the hearsay evidence was admitted without an objection. Thus, it should have been considered and given its natural probative effect.

■■ Furthermore, with regard to the court's latter finding we point out that the discretion of an administrative agency is broad and its determinations may not be overturned because the court may think them unwise or their policy inappropriate. *James v. Cook County Department of Public Aid* (1970), 126 Ill. App. 2d 75, 261 N.E.2d 420.

In light of the foregoing and based upon our review of the administrative record, we cannot say that the Board's decision was against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Greene County is reversed.

Reversed.

GREEN, P.J., and McCULLOUGH, J., concur.