GARY LYLES, Plaintiff-Appellee, v. THE DEPARTMENT OF TRANSPORTATION et al., Defendants-Appellants.

Fourth District   No. 4—88—0674

Opinion filed May 25, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Valerie J. Peiler, Assistant Attorney General, of Chicago, of counsel), for appellants.

Tom Schanzle-Haskins, of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

The Civil Service Commission (Commission) upheld the discharge of Gary Lyles from his position as highway maintenance lead worker with the Department of Transportation of the State of Illinois (Department or DOT). Plaintiff brought this action in administrative review (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*), and the circuit court of Jersey County reversed the Commission, reasoning:

> "The finding of the examiner that [Lyles] was guilty of theft is against the manifest weight of the evidence. The Court further finds that the dismissal of [Lyles] from employment was contrary to the rules for discharge and discipline of the Civil Service Commission in effect at the time of the hearing."

On appeal, the Commission and the Department seek reinstatement of the Commission's decision, arguing the decision is supported by the evidence and the discharge was neither arbitrary nor capricious. We reverse and reinstate the order of the Commission approving plaintiff's discharge from employment.

## I

This case arose as a result of a criminal investigation late in 1985, involving operations in District Eight of DOT, which included its highway maintenance facilities in Jerseyville and Carrollton. The top administrator over the facilities was James Langston, the field technician in charge. Langston's office was at the Jerseyville facility, and he gave instructions to plaintiff Lyles, the Jerseyville lead worker, to Richard Woolsey, the lead worker for the Carrollton facility, and to George Lorsbach, the lead lead worker.

The general work of the employees at the facilities involved highway maintenance, including driving trucks, mowing along the side of the highway, cutting brush and trees, patching concrete and blacktop, and putting gravel on the edge of the roads.

On December 5 and 6, 1985, investigative interviews were conducted at the Jerseyville and Carrollton transportation yards by the Illinois State Police at the request of DOT. William Barrett, along with other State police officers and DOT administrators, conducted individual interviews with the employees to obtain information on property employees had obtained through their work for DOT. Thereafter, employees brought the items back to DOT or the State police went to their residences to obtain the property. As the items were brought back to the DOT facility, agents were responsible for receiving the evidence, labelling the items received—alphabetically identified to the employee returning items and numbered sequentially as to items received. Bar-

rett was thereafter in charge of taking recovered property to a rented storage area in Alton, Illinois, where it was stored under lock.

At the conclusion of the employee interviews, DOT formulated written charges as to the various employees, listing the items of "State equipment" the employee "admitted to taking" and returned to law enforcement agents. On December 11, 1985, predisciplinary hearings were held at DOT District Eight headquarters and employees were confronted with charges. Employees were thereafter advised of DOT sanctions from suspension through discharge imposed as a result of the investigation.

Plaintiff was employed by the Department on February 20, 1975, as a highway maintenance equipment operator. He was thereafter promoted to the position of lead worker. Based on statements of plaintiff and other employees during the investigation, plaintiff was charged with having admitted theft involving State property, *i.e.*, a used battery taken for his personal use, a new battery for his personal use, as well as four used tires and two 55-gallon drums. He was also charged with misuse of time and with purchasing violations involving State credit cards registered to off-road vehicles.

An administrative hearing was held December 7, 1987. The hearing officer thereafter found the evidence supported the charge that in August or September 1985, Lyles took a new battery for his personal use, but found the evidence insufficient to support other charges. He found the conduct warranted discharge. The hearing officer referred to the employment policies applicable to DOT employees:

"60. The employees at the yards were also given a green book entitled, 'Personnel Policies and Procedures Manual' and a yellow book entitled 'Work Rules for Maintenance and Traffic Negotiated personnel.' The employees are required to sign receipts for each book. Page 36 of the green book provides that employees may not consume State property or equipment for personal use nor are they permitted to remove from State premises any property belonging to the State without State authorization. The booklet also addresses disposal of moveable property in that such property which is to be sold or otherwise disposed of must be arranged for disposal through the district or bureau property control officer and the proceeds must be deposited with the State Treasurer. Moveable property, according to the rule, means all property of every kind including but not limited to scrap metal, soda cans and bottles but not including real property. On page 3 of the yellow booklet it provides that the unauthorized use of State property such as State-owned vehicles,

equipment, credit cards or State vouchers, the use or consumption of State property for private purposes *** will be grounds for disciplinary action in the form of discharge, suspension, or warning.
***

62. The Department showed that there were memoranda and work rules which detailed the procedures by which property either classified as found, surplus or trash is to be disposed of. However, there was a practice under Langston whereby men with Langston's consent were allowed to remove items placed in the trash pile."

The hearing officer found as follows:

"64. In general, it was the employees' explanation that the property that they took was either junk, trash, or rubbish with little or no value thrown away by the Department and was taken with the permission of their lead worker, George Lorsbach, or the maintenance technician, James Langston.

65. The State of Illinois sought indictments against a number of employees before a Grand Jury. However, all of the statements and admissions given by the individual employees were suppressed by the judges assigned to the case on the evident basis that the employees were not given their Constitutional warnings and were subjected to unlawful self-incrimination. Therefore, none of the employees were tried on theft of property charges. The parties to the Commission hearing stipulated that three employees were questioned and disciplined. They were David Bray, Rick Hagen, and Wesley Foiles. Foiles received a 30-day suspension for taking six guardrails, one battery, one can of starter fluid, one 55-gallon barrel, three gallon containers of oil, and one spotlight. He was also guilty of unauthorized use of time. Rick Hagen was given a five-day suspension for taking two Goodyear tires, two Goodyear snow tires, and one-half day of unauthorized use of time. Bray was given a five-day suspension for taking two 55-gallon drums, one battery, and 31 junk regular tires. A number of other employees were discharged, five of whom appealed to the Illinois Civil Service Commission. The five who appealed included [Lyles], John Kraut, who was employed as the mechanic at the Jerseyville yard, George Lorsbach, the lead lead worker over the Jerseyville and Carrollton yards, Richard Woolsey, a lead worker at the Carrollton yard, and Clifton Cunningham, a highway maintainer.

66. [Lyles] was charged with the theft of a battery. Officer

Anders testified that when he interviewed [Lyles] on December 5, 1985, [Lyles] told him that the battery that he took was new although he had asked for a used battery. According to [Lyles], Lorsbach who was the lead lead worker had given him a new battery. Lorsbach testified that he never told Officer Barrett that he gave a State battery to [Lyles]. Officer Barrett testified that Lorsbach told him during the investigatory interview that he gave a new battery to [Lyles] which was used by [Lyles] in his lawn mower. Barrett then went to [Lyles'] residence and [Lyles] gave him Petitioner's Exhibit 1, which is a garden tractor battery.

67. [Lyles] testified that on December 10, 1985 he gave Officer Barrett the battery introduced as Petitioner's Exhibit 1. [Lyles] claimed that he did not know where the battery came from. He had asked Lorsbach for a used battery. Either Hagen or Lorsbach then told him later at work that a battery has been placed in his truck. [Lyles] testified that he did not know if the battery was Lorsbach's battery or was from the State of Illinois. [Lyles] said that when he asked Lorsbach for a battery he was asking that Lorsbach personally give him one and not that he be given a battery from the State. [Lyles] testified that he was given the battery in August or September of 1985. He installed it in his lawn mower at his residence but it would not turn over the engine.

68. The evidence does support the charge that in August or September of 1985 [Lyles] had taken a new battery for his personal use from the Illinois Department of Transportation. There is [Lyles'] admission to Officer Anders on December 5, 1985 that the battery he received was a new battery. It is difficult to conclude that Lorsbach merely gave [Lyles] a gift of a new battery. There was no testimony of why Lorsbach should bestow such a gift upon [Lyles], nor did Lorsbach ever testify that he did make a gift of a new battery to [Lyles]. [Lyles] testified that he received the battery while at work. He had asked Lorsbach, who had access to State batteries, for a battery. It is simply not believable that [Lyles] could have been so naive as to not believe that the battery in question was a State-owned battery. The conclusion that the battery was new is supported by the limited warranty label on Petitioner's Exhibit 1 which states that the battery was new in September of 1985. Accordingly, [Lyles] is found guilty of this charge.

* * *

82. [Lyles] did hold a responsible position of lead worker at the Jerseyville shed. [Lyles] has had no past discipline of record \*\*\*. The issue is whether the taking of a new battery from a State garage by an employee without authorization for his own personal use is cause for discharge. The Hearing Officer cannot find that the Department has wrongfully discharged [Lyles] for this offense. The battery in evidence as Petitioner's Exhibit [1] cannot be classified as junk or discarded property. [Lyles'] story that this was a gift from his supervisor during the course of his workday is not believable. It is the Hearing Officer's finding that this offense constitutes cause for discharge and discharge is so ordered."

Respondent was notified of the findings and recommended decision of the hearing officer and filed objections. Thereafter, the Commission adopted the decision of the hearing officer and certified it for enforcement, concluding the written charges had been partially proved and that "said partially proven charges warrant the discharge of the Respondent Gary Lyles, from his position as a Highway Maintenance Lead Worker with the Department." Plaintiff sought administrative review, the circuit court reversed the Commission's order, and this appeal followed.

## II

■ A court's scope of review of an administrative agency's decision on discharge is a two-step process. First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. The findings and conclusions of an administrative agency on questions of fact are held to be *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) The second step in the court's analysis is to determine whether the findings of fact provide a sufficient basis for the conclusion that "cause" for discharge exists. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 551, 426 N.E.2d 885, 887 (DuFrenne, appellant) (hereinafter cited as *DuFrenne*).

## A

On appeal, the Commission and DOT first argue the Commission's determination that Lyles took State-owned property, a tractor battery, was not against the manifest weight of the evidence.

■ The agency's findings and conclusions on questions of fact will not be disturbed on review unless contrary to the manifest weight of the evidence. (*Garland v. Department of Labor* (1984), 104 Ill. 2d 383,

392, 472 N.E.2d 434, 437.) A finding is against the manifest weight of the evidence only if an opposite conclusion is "clearly evident." (*Burnham City Hospital v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 999, 1003, 467 N.E.2d 635, 637; *Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 5, 457 N.E.2d 512, 515 (and cases cited therein); *Komarec v. Illinois Department of Labor* (1986), 144 Ill. App. 3d 1105, 1108-09, 494 N.E.2d 1257, 1259-60.) The courts will not reweigh the evidence, but rather are limited to a determination of whether the final decision of the administrative agency is just and reasonable in light of the evidence presented. Neither the appellate court nor the circuit court may substitute its judgment for that of the administrative agency. (*Davern v. Civil Service Comm'n* (1970), 47 Ill. 2d 469, 471-72, 269 N.E.2d 713, 714 (and cases cited therein).) If the issues merely involve conflicting testimony and the credibility of the witnesses, the agency's determination should be upheld. (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 383, 465 N.E.2d 1052, 1058.) Similarly, conflicting evidence is not grounds for reversing the Commission's findings of fact. *Fox v. Illinois Civil Service Comm'n* (1978), 66 Ill. App. 3d 381, 388, 383 N.E.2d 1201, 1206.

In the instant case, the circuit court found the hearing officer's finding that Lyles was guilty of theft was against the manifest weight of the evidence. As Lyles argued in his objections to the hearing officer's report, in his brief in support of his petition for administrative review, and now on appeal, since the State charged him with theft of State property it must prove theft.

He claims the evidence does not support the hearing officer's conclusion that theft was proved. In support of this argument, plaintiff looks, first, to the statutory definition of theft: "A person commits theft when he knowingly: (a) obtains or exerts unauthorized control over property of the owner; *** and (1) Intends to deprive the owner permanently of the use or benefit of the property." (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(a)(1).) Second, he argues proof that one other than the accused either owned or has a superior possessory interest in the property allegedly stolen is an essential element of the offense of theft, relying on *People v. Cowan* (1977), 49 Ill. App. 3d 367, 368, 364 N.E.2d 362, 363; *People v. Mick* (1980), 86 Ill. App. 3d 1022, 1025, 408 N.E.2d 1079, 1083; *People v. Sims* (1975), 29 Ill. App. 3d 815, 817, 331 N.E.2d 178, 179; *People v. Traylor* (1975), 26 Ill. App. 3d 687, 325 N.E.2d 383 (abstract of opinion). He contends the State's ownership of the battery was not proved. Third, plaintiff points to the hearing officer's first finding: "At the outset of the case the State stipulated that it does not have receipts for any of the State's property allegedly mis-

appropriated by [Lyles]." Plaintiff contends purchase records for the property, if it was purchased by the State, must exist and, if so, would be within the control of the State of Illinois. From this, he argues the legal effect of the failure of the State to produce such evidence is to permit the inference that the evidence would be adverse to that party, citing Illinois Pattern Jury Instructions, Civil, No. 5.01, at 42 (2d ed. 1971).

Plaintiff contends there was no evidence presented to indicate batteries of the type introduced against him were ever purchased or owned by the State, he testified he never saw this type of battery at the Jerseyville facility, and that there is no testimony in the record the State ever purchased batteries for lawn mowers. He maintains the only evidence supporting such a finding is the testimony of Officer Anders asserting plaintiff made admissions to him, and that this testimony is insufficient support, particularly where the hearing officer specifically found testimony from Anders on other material issues, *i.e.*, purchasing violations and irregular use of time, insufficient to support those charges.

■ Plaintiff argues no finding that the battery was State property can stand. We disagree. This was not a criminal proceeding. That the State did not present evidence documenting purchase of this particular battery does not preclude the fact finder from concluding it was State property which was misappropriated. While presentation of evidence substantiating the State's purchase of this battery or purchase and use of similar batteries would have made a clearer case, the Department may have considered Lyles' admissions sufficient.

■ The parties agree the proper standard of proof applicable to discipline and discharge proceedings, including those where conduct that might constitute a crime is charged, is the preponderance of the evidence standard. *(Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 186, 497 N.E.2d 984, 989 (Kimbrough, appellee).) There had only to be evidence from which it could be concluded that it was "more likely than not" the battery was State property. There was.

Evidence was offered to support the hearing officer's findings with respect to the battery, as summarized by his decision at paragraph Nos. 66 through 68. Officer Barrett identified the battery he received from Lyles and marked as N–1, and produced at trial, and testified Lyles indicated this was "the battery" that had been "given to him by Lorsbach." Barrett testified, "That is the same battery that was transferred to me or given to me by Mr. Lyles on December 10, 1985, as the property of the State of Illinois." Determining the weight and credibil-

ity of the witnesses' testimony and the inferences to be drawn there-from was a matter particularly within the purview of the hearing officer.

As to the objections of plaintiff's counsel, they were not interposed when Barrett was questioned about Lorsbach's statements about misuse of State property by Lyles, but when questioning went on to misuse of State time and purchasing irregularities, based on the hearsay nature of such statements. The hearing officer, at paragraph Nos. 11, 13, and 15 of his decision, specifically found in plaintiff's favor as to those matters.

### B

As to the second step of the analysis, the Commission and DOT argue Lyles' discharge was neither arbitrary nor capricious and should be upheld. Lyles argues (1) imposition of discharge was arbitrary, unreasonable, and unrelated to the requirements of DOT, and (2) the Commission failed to follow its own rules, which require progressive discipline.

The Commission's rules provide:

> "*Unless grounds clearly are present warranting immediate discharge* or suspension pending decision on discharge, employees shall be subject to corrective discipline progressively utilizing counseling, warnings, and/or suspension, as facts and circumstances dictate, prior to discharge. If an employee's work or work-related conduct remains unacceptable after the application of progressive corrective discipline, such employee may be discharged in accordance with the appropriate rules below." (Emphasis added.) (80 Ill. Adm. Code §302.626, at 9478 (1985).)

The Commission contends theft of State property is grounds for immediate discharge.

■ Section 11 of the Personnel Code prohibits discharge of employees except "for cause." (Ill. Rev. Stat. 1987, ch. 127, par. 63b111.) There is no statutory definition of cause. Cause has been judicially defined as " 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' " (*DuFrenne*, 85 Ill. 2d at 551, 426 N.E.2d at 887.) The question of whether there is sufficient cause for discharge is generally for the agency to determine. *DuFrenne*, 85 Ill. 2d at 551-52, 426 N.E.2d at 887; *Department of Driver Services, Secretary of State v. Secretary of State Merit Comm'n* (1985), 132 Ill. App. 3d 753, 754, 477 N.E.2d 1372, 1374

(Smock, appellant).

Attempts on the part of courts to tinker with punishments meted out by administrative agencies have met with very little success. *DuFrenne* is a premier example. Others are collected in *Department of Mental Health & Developmental Disabilities v. Illinois Civil Service Comm'n* (1982), 103 Ill. App. 3d 954, 431 N.E.2d 1330 (Mars, appellant), Justice Stamos writing for the court. Obviously this stems from the deference which courts are required to pay to the findings and the actions of the agencies. In a broad sense, it is the civil counterpart of the deference which a reviewing court must pay to a trial court's criminal sentence. *Secretary of State v. Kunz* (1983), 116 Ill. App. 3d 736, 739, 452 N.E.2d 387, 390, citing *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

The hearing officer detailed the sanctions imposed on other employees at paragraph No. 65 of his recommended decision. As pointed out by the Commission, the stipulation as to these employees fails to disclose the facts surrounding the charges, including whether the items taken were new or removed from the trash bin or in a yard cleanup. The absence of such facts precludes meaningful comparison of the sanctions imposed on these employees in relation to Lyles' discharge.

■■ Langston, who supervised both the Carrollton and Jerseyville facilities, received a 30-day suspension for permitting employees to take material from the trash. The parties also stipulated to the inclusion of testimony of certain employees, which included the following:

| Employee | Infractions | Discipline |
|---|---|---|
| Duane Barnes | 1 50-gallon drum of used oil, 3 batteries, some culvert metal, 1 old tire | 1 day without pay |
| Ralph Becker | 5 truck tires given to him during a clean-up of the yard, and 2 days off without leave | 3-day suspension |
| John Collins | 1 battery, some metal, 2 55-gallon drums | discharged |
| Steven Bret Schmieder | 1 log chain from trash pile, 1 shovel which was being discarded, and a battery | 3-day suspension |

We note Collins' testimony about the battery he received:

"Q. While you were working for the Department of Transportation there at Jerseyville, did you ever have occasion to take a used battery?

A. Yes, once.

Q. And how did that occur?

A. I had a battery go dead on my truck, and they had a battery they had taken out of a truck, at Jerseyville shed, and the mechanic seemed to think that it was, wasn't nothing wrong with the battery, but they wanted to replace it anyhow. So he said they had to have it back for a trade-in to get a new battery. They said as long as they had a battery, they could, there was no big deal. So I give him my old battery and I took theirs. As I told you earlier, come to find out, that battery wasn't no good either."

Collins was also discharged. A number of other employees were discharged; the hearing officer named five who appealed to the Commission. On this record, we cannot find plaintiff's discharge arbitrary, capricious, or unrelated to the needs of the service.

■ Moreover, as was stated in *Jones v. Civil Service Comm'n* (1979), 80 Ill. App. 3d 74, 76, 399 N.E.2d 256, 258, sufficient cause for a plaintiff's discharge may exist regardless of whether other employees had received different treatment. See *McCaffery v. Civil Service Board* (1955), 7 Ill. App. 2d 164, 129 N.E.2d 257; *Strobeck v. Illinois Civil Service Comm'n* (1979), 70 Ill. App. 3d 772, 338 N.E.2d 912.

Plaintiff was a lead worker and obtained a new battery under circumstances which cannot be condoned. Public policy requires a high degree of integrity in government employees. An employee's misconduct may be detrimental to the agency itself and to the public as a whole inasmuch as, although the position may not be one of great notoriety, it is a position involving a degree of trust. Highway maintainers are not subject to constant supervision, which necessitates an additional degree of trust. In that trust lies a responsibility, and employees must be prevented from denigrating that trust and undermining public confidence. Clearly, the Department had a legitimate interest in dismissing those employees who take State property for their own personal use and benefit.

Plaintiff cites *Bell v. Civil Service Comm'n* (1987), 161 Ill. App. 3d 644, 515 N.E.2d 248, as supporting the need for progressive corrective discipline. In that appeal, the plaintiff challenged the sanction of discharge imposed by the Commission over the recommendation of the hearing officer that she be suspended for 30 days. There, although the

employer department proved discrepancies existed in the employee's time reports in case files, used to record how investigators used their time, the hearing officer concluded the employer department had not proved the employee *intentionally falsified* the reports. The technical time report used was subsequently changed after the audit to incorporate areas of time spent working on a case that would not necessarily generate a report. The hearing officer recommended the discharge be reversed and plaintiff be given a 30-day suspension. The Commission, in its findings, however, merely adopted the hearing officer's decision " 'to the extent not inconsistent with [its] comments,' " but its comments only stated, " 'it is our judgment that the charges were proved. Discharge is warranted because of the serious consequences of the failure to properly account. We, therefore, uphold discharge and order respondent discharged from her position ***.' " (*Bell*, 161 Ill. App. 3d at 648, 515 N.E.2d at 250.) The specific findings of the hearing officer were never rejected. Although the circuit court affirmed the Commission, the appellate court reversed, stating:

"The Commission did not set forth specific findings of fact or conclusions of law in support of their decision not to follow the hearing officer's recommendation that plaintiff be suspended for 30 days. There is, however, substantial evidence in the record to support the hearing officer's finding that the Department failed to prove that the plaintiff intentionally falsified documents as charged. The evidence also supports the hearing officer's more reasonable conclusion that the plaintiff misunderstood the instructions on allocating her time.

Section 14 of the Illinois Administrative Procedure Act states in pertinent part:

'A final decision or order adverse to a party (other than the agency) in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be [accompanied] by a concise and explicit statement of the underlying facts supporting the findings.' (Ill. Rev. Stat. 1983, ch. 127, par. 1014.)

*** The Commission's findings were however, merely conclusory and insufficient. They therefore fail to meet the standards and requirements necessary to support the Commission's conclusion that discharge was warranted. *Bodine v. Civil Service Comm'n* (1985), 134 Ill. App. 3d 341, 480 N.E.2d 160.

Since the Commission failed to set forth reasonable support of their decision to discharge the plaintiff, their decision was arbi-

trary and unreasonable.

The Commission neither rejected nor made any finding inconsistent with the hearing officer's findings of facts. The Commission's 'findings' were not sufficiently specific to support their conclusion, which was contrary to the hearing officer's conclusion.

Considering the length of plaintiff's service as a State employee, her overall performance, and the failure of the Commission to meet the requirements of section 14 of the Code, we conclude that plaintiff's conduct was not such that the discipline and efficiency of the Department would be undermined if plaintiff was not discharged. Plaintiff's actions were not sufficiently substantial or related to her performance duties to call for the maximum sanction of discharge. Clearly, the evidence does not justify imposition of 'industrial capital punishment.' We therefore conclude that the evidence concerning the charges, which the hearing officer found unproven, was insufficient as a matter of law to support the ultimate sanction of discharge." (*Bell*, 161 Ill. App. 3d at 649-50, 515 N.E.2d at 251-52.)

It was in this context that the *Bell* court thereafter discussed the Commission's rules on progressive discipline. We find *Bell* inapposite to the case before us.

The Commission's assessment of the proper penalty here cannot be said to be arbitrary, unreasonable, or unrelated to the needs of the service.

Accordingly, for the reason herein stated, the order of the circuit court of Jersey County is reversed and the order of the Commission is affirmed and reinstated.

Reversed; Commission's order affirmed and reinstated.

McCULLOUGH, P.J., and KNECHT, J., concur.