THE PEOPLE *ex rel.* JEREMY MARGOLIS, Director of the Department of the State Police, Plaintiff-Appellee, v. MICHAEL ROBB *et al.*, Defendants-Appellants.

Fourth District   No. 4—91—0388

Opinion filed February 13, 1992.

Edward H. Rawles, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellants.

Joseph J. Duffy and Heidi Dalenberg, both of Schiff, Hardin & Waite, of Chicago, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

The Director of the Illinois State Police (State Police) filed charges with the Illinois State Police Merit Board (Merit Board or Board), alleging defendant Michael Robb had improperly provided three documents—relating to allegations made against an elected official, the coroner—to the official who was the subject of the allegations. The three documents were: (1) an investigative report prepared by Master Sergeant C.F. Gross (petitioner's exhibit No. 1); (2) an office memorandum from Gross to Major Thomas Schumpp (petitioner's exhibit No. 2); and (3) an office memorandum from Schumpp to Deputy Superintendent Larry Dowdy (petitioner's exhibit No. 3). Based on this alleged conduct, the complaint charged defendant violated the rules of conduct (ROC) of the State Police: ROC-1, paragraph 1—27 (dissemination of information); ROC-1, paragraph 1—3(a), and official policies (OPS), OPS 18—3 (dissemination of intelligence and investigative information), OPS 18—3(a) (assisting criminals), and OPS 18—3(b) (compromising criminal cases); ROC-3 (code of ethics); and ROC-1, paragraph 1—6 (unbecoming conduct).

Originally, zone 6 of the State Police obtained information relating to allegations of unlawful conduct and wrongdoing by the official. Gross compiled information, including exhibit Nos. 1 and 2, copies of the official's telephone records and other items, and forwarded them to zone 10 of the State Police. At this time, no case number had been assigned to the matter, nor had an official investigative file been opened.

Defendant Robb, along with two other officers from zone 10, took the documents received from zone 6 to the Champaign County State's Attorney's office to be reviewed to determine whether further investigation was warranted for that office to bring criminal charges. On December 11, 1987, the State's Attorney's office informed defendant Robb, for the benefit of the State Police, that it did not wish to pur-

sue the matter but had forwarded the material to the Attorney General's office for an independent determination.

In April 1988, the official approached defendant Robb and inquired about the status of the investigation. Robb responded that the State Police was not conducting an investigation, but the matter had been referred to the State's Attorney's office. The official indicated he was aware of the State's Attorney's involvement and that the matter had been referred to the Attorney General's office. He then asked Robb if he could obtain a copy of the original documents received by the State Police. Later, Robb delivered the State Police's copy of the documents that had been provided to the State's Attorney's office to the business with which the official was affiliated in an envelope on which Robb had written the official's name. Robb stated the documents were bound together by an "Acco" clip. On July 20, 1988, the Attorney General's office executed a search warrant on the official's office. During the search, copies of the exhibits were found in the official's briefcase. The exhibits were in an envelope and did not appear to have any punch holes which would indicate they had been fastened with other documents.

The Attorney General's office and the State Police questioned Robb to determine how the official had obtained the documents. Robb responded he had given the official the documents he had received from zone 6 and which had been delivered to the State's Attorney's office. During the Attorney General's interview, Robb was not shown all of the exhibits, and, therefore, it was unclear whether the documents Robb admitted delivering to the official were the same as the exhibits. During the disciplinary hearing, Robb testified he did not recall petitioner's exhibit Nos. 1 and 3 as being included in the documents he had given over to the official. However, he did admit that if petitioner's exhibit No. 2 was not one of the documents he gave over to the coroner, it was very similar to it. Robb further testified he regarded the coroner as part of the law enforcement community.

The State's Attorney testified that exhibit No. 2 had been the top document on the sheath of papers which he had been asked to review and which he had forwarded to the Attorney General's office for an independent assessment. Robb's superior testified it would be incorrect to provide someone, including another police officer, police agency, or another governmental agency, with documents containing information relating to allegations made against that person or agency.

Additionally, at the hearing, conflicting testimony was heard regarding which of the exhibits were included in the papers taken to the

State's Attorney's office, but there was uncontroverted evidence the State Police did not commence an investigation of the elected official or open an official investigative file, pursuant to departmental procedures.

Based on this evidence, the hearing officer held plaintiff had failed to establish Robb violated its rules. To reach this conclusion, the hearing officer maintained that plaintiff failed to prove Robb actually delivered petitioner's exhibits Nos. 1 and 3 to the official. He relied on the fact the exhibits did not appear to have been fastened at the top as described by Robb. As to petitioner's exhibit No. 2, he stated Robb admitted providing that document, along with other items, to the official. However, he noted petitioner's exhibit No. 2 was an interoffice memorandum and not an investigative file as, he stated, had been pleaded. (This was erroneous as the charges had identified exhibit No. 2 as an "inter-office memorandum.") The officer concluded ROC 1—27 prohibited only the dissemination of investigatory information. Since petitioner's exhibit No. 2 was not an investigatory document, the State Police had not commenced an investigation of the official or opened an investigatory file, and there was no evidence before him concerning "established departmental procedures" for the dissemination of noninvestigatory material, he held the plaintiff failed to prove Robb had violated the rules by providing the coroner with petitioner's exhibit No. 2. Further, he held Robb's admission of providing other documents to the coroner was not a *per se* violation of ROC 1—27. As a result of plaintiff's failure to establish a violation of ROC 1—27, he found no violation of OPS 18—3, OPS 18—3(a) and OPS 18—3(b). The hearing officer further found no violation of ROC-3 (the code of ethics), or ROC-1, paragraph 1—6 (unbecoming conduct). On November 8, 1989, the Merit Board adopted the findings of the hearing officer.

The plaintiff petitioned for administrative review, and on August 7, 1990, the circuit court reversed the decision of the Merit Board and remanded the case to it to enter findings and conduct further proceedings. Pursuant to the circuit court's order, the Merit Board accepted that plaintiff had proved the charges against Robb and ordered him suspended for 15 days. Later, plaintiff filed a supplemental complaint for administrative review, seeking Robb's discharge or additional hearings to determine the appropriate disciplinary action against Robb. Additionally, Robb filed a petition for reconsideration of the circuit court's August 7 ruling. On May 6, 1991, the circuit court denied plaintiff's supplemental complaint and denied Robb's motion for reconsideration. Robb appeals the circuit court's August 7 order reversing the decision of the Merit Board, contending the Merit

Board's original decision was not against the manifest weight of the evidence and should be reinstated.

The Merit Board's findings and conclusions on questions of fact will not be disturbed on review unless contrary to the manifest weight of the evidence. (*Lyles v. Department of Transportation* (1989), 183 Ill. App. 3d 901, 907, 539 N.E.2d 833, 837, citing *Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 392, 472 N.E.2d 434, 437.) A finding is against the manifest weight of the evidence if all reasonable and unbiased persons could agree an opposite conclusion is "clearly evident." (*Lyles*, 183 Ill. App. 3d at 908, 539 N.E.2d at 837 (and cases cited therein); *Jackson v. Department of Labor* (1988), 168 Ill. App. 3d 494, 499, 523 N.E.2d 5, 9 (and cases cited therein).) A reviewing court cannot reweigh the evidence, make independent determination of facts or substitute its judgment for that of the Board, even if it believes the opposite conclusion might be reasonable. The court's function is limited to ascertaining whether the Board's decision was against the manifest weight of the evidence. (*Lyles*, 183 Ill. App. 3d at 908, 539 N.E.2d at 837; *Jackson*, 168 Ill. App. 3d at 499, 523 N.E.2d at 8-9.) Conflicting evidence is insufficient to reverse the Board's decision. (*Lyles*, 183 Ill. App. 3d at 908, 539 N.E.2d at 837, citing *Fox v. Illinois Civil Service Comm'n* (1978), 66 Ill. App. 3d 381, 388, 383 N.E.2d 1201, 1206.) Since the weight of the evidence and credibility of the witnesses are within the province of the Board, there only needs to be some competent evidence in the record to support the Board's decision. *Jackson*, 168 Ill. App. 3d at 499, 523 N.E.2d at 9 (and cases cited therein).

Based upon the aforementioned principles and consideration of the record, we affirm the circuit court's decision. We do not reach the issue of whether it was against the manifest weight of the evidence for the Board to conclude Robb had not provided the official with petitioner's exhibit Nos. 1 and 3 because, by defendant's own admission, he provided the elected official with petitioner's exhibit No. 2. We now turn to determine whether it was against the manifest weight of the evidence for the Board to conclude dissemination of this document did not violate the rules of the State Police. In doing so, we note that although an agency's interpretation of its own rules or the statute it is charged with administering is to be accorded some deference, courts of review are not bound to give the same degree of deference to an agency's construction of, for example, a statute, contract, or rules, as given to its findings of fact. Therefore, it has been held, for example, that a decision based upon an erroneous, arbitrary or unreasonable construction of a statute will not stand. (*Harrisburg-Raleigh*

*Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 331, 533 N.E.2d 1072, 1073-74.) The resolution of this issue in this case turns on the interpretation given to the State Police's rules by the hearing officer and adopted by the Merit Board.

■ Count I alleged Robb violated ROC-1, paragraph 1—27, which states:

> "Officers shall treat the official business, evidence, documents and photographs of the Department as confidential. Information regarding official business shall be disseminated in accordance with established Departmental procedures. Officers may remove or copy official records or reports from a police installation only in accordance with established Departmental procedures. Officers shall not divulge the identity of persons giving confidential information except as authorized by proper authority or release items of evidence, documents, photographs, etc. to members of the news media or others outside the criminal justice system without the express permission of the applicable Division Head."

The hearing officer held this rule prohibited only the dissemination of investigative material. However, this interpretation is clearly erroneous. The rule makes no distinction between investigative and noninvestigative material. Rather, the rule precludes the dissemination of the "official" business, et cetera, of the State Police. Although "official" is not defined, it is incomprehensible to conclude petitioner's exhibit No. 2 was not within the meaning of "official business, evidence or documents *** of the Department." Zone 10 received the information during the course of its work and in its capacity as a facet of the State Police. This was official business, regardless of whether an investigation was pending, case number assigned or an official file opened.

■ Count II alleged Robb violated ROC-1, paragraph 1—3(a), in that he violated the following policies of the State Police: OPS 18—3, OPS 18—3(a) and OPS 18—3(b), which state:

> *"DISSEMINATION OF INFORMATION*
> The dissemination of information that is in possession of this Department is permitted on a need-to-know basis. No Departmental employee shall confirm the existence or non-existence of any intelligence, investigative, criminal, or any other Departmental record or information to any person or agency not specifically authorized to receive such information. Those authorized to receive such information shall be limited to members of this Department or another criminal justice agency if,

and only if they have need for the information in the performance of their official duties. All employees shall treat as confidential the business of the Department.

(a) *Assisting Criminals*

Employees shall not knowingly communicate in any manner, directly or indirectly, any information in possession of the Department which might assist persons guilty or suspected of criminal acts to escape detection, arrest, prosecution, or punishment, or which may enable them to dispose of or to secret evidence of unlawful activity or money, merchandise, or other property unlawfully obtained.

(b) *Compromising Criminal Cases*

Employees shall not interfere with or interrupt any investigatory or legal process, nor without authorization discuss the content of any on-going investigation other than as may be required in the performance of their official duties."

According to OPS 18—1, the purpose of the OPS rules is to maintain "the security and confidentiality of intelligence and investigative information." According to OPS 18—2, the policy of the State Police is to adopt procedures to "prevent the unauthorized disclosure of intelligence or investigative information in order to preserve the integrity of the investigative process, to promote adherence to the principles of due process, and to insure the safety of its officers." Clearly, Robb's conduct violated these policies.

Section 18—3 specifically prohibits the dissemination of information "in the possession of the Department." Zone 6 compiled the information through the course of its work and forwarded it to zone 10. The information dealt with allegations against an elected official and obviously was departmental business, regardless of whether it was technically classified as investigative or intelligence information and irrespective of whether a case number had been assigned or an official file opened. Upon receipt of the information, Robb, along with other officers, took the material to the State's Attorney's office to determine whether that office would conclude further investigation was warranted. Later, the State's Attorney's office informed Robb, for the benefit of the State Police, that it was forwarding information to the Attorney General's office for an independent assessment. When Robb gave the official the State Police's copy of the documents, he was aware the Attorney General's office was in possession of the same documents.

To conclude Robb did not disseminate information in the possession of the State Police, and within the purview of OPS 18—3, defies

logic. To hold otherwise would render much of the policies' language meaningless or superfluous. The use of the terms "any intelligence, investigative, criminal or any other departmental record or information" demands they be given broad meaning to maintain the security and confidentiality of information received by the State Police. If information given to the State Police were not treated as confidential and could readily be given to the subject of the material, the investigative process would be severely undermined. A police officer should be aware giving documents relating to the allegations against an elected official, which had also been given to the State's Attorney's office and forwarded by that office to the Attorney General's office, to the very official who was the subject of the allegations violated departmental policy. This interpretation gives meaning and effect to all of the language of the policy and accords with the principle that a court should not adopt a construction that would render language meaningless or superfluous. (See *People v. Parvin* (1988), 125 Ill. 2d 519, 525, 533 N.E.2d 813, 815; *In re Application of Rosewell* (1989), 127 Ill. 2d 404, 409-10, 537 N.E.2d 762, 765.) Neither should the Merit Board.

■■ Based on this analysis, it equally is necessary to conclude Robb violated the code of ethics, which states, in pertinent part: "Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in performance of my duty." Further, it is logical to conclude Robb violated ROC-1, paragraph 1—6, unbecoming conduct, which states:

> "Officers shall conduct themselves on and off duty in such a manner as to reflect favorably on the Department. Officers will not engage in conduct which discredits the integrity of the Department or its employees, or which impairs the operations of the Department. Such actions shall constitute conduct unbecoming an officer."

To give such a limited reading to the rules and policies of the State Police as did the hearing officer is more than unwise; it defies all reason. Our interpretation gives meaning to all the language of the State Police's rules and policies. The decisions of the hearing officer and of the Merit Board were against the manifest weight of the evidence. Therefore, we affirm the circuit court's ruling.

Affirmed.

GREEN, P.J., and McCULLOUGH, J., concur.