# Illinois Official Reports

## Appellate Court

***Matlock v. Illinois Department of Employment Security*,**
**2019 IL App (1st) 180645**

| | |
|---|---|
| Appellate Court Caption | LATHEL MATLOCK, Plaintiff-Appellant, v. THE ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY; THE DIRECTOR OF EMPLOYMENT SECURITY; THE BOARD OF REVIEW OF THE ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY; and THE DEPARTMENT OF HUMAN SERVICES, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-18-0645 |
| Filed | May 28, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-51057; the Hon. James M. McGing, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lathel Matlock, of Chicago, appellant *pro se*.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Benjamin F. Jacobson, Assistant Attorney General, of counsel), for appellees. |

| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justice Hyman concurred in the judgment and opinion.
Justice Lavin dissented, with opinion. |

## OPINION

¶ 1        Plaintiff, Lathel Matlock, appeals the trial court's order, affirming the decision of the Board of Review of the Illinois Department of Employment Security (IDES or Board) denying him unemployment benefits under the Unemployment Insurance Act (Act) (820 ILCS 405/100 *et seq.* (West 2016); 820 ILCS 405/601(A) (West 2016)). Plaintiff appeals the trial court's judgment *pro se*. We reverse.

¶ 2                                    I. BACKGROUND

¶ 3        The record shows that, from February 10, 2017, to August 6, 2017, plaintiff provided adult care services as an individual provider for the Home Services Program of the Illinois Department of Human Services (DHS). On August 6, 2017, plaintiff filed a claim for unemployment insurance benefits under the Act. The notice of claim to the employer provided that plaintiff began work on February 10, 2017, and his last day of work was August 6, 2017. Under the section "Reason for Separation," it states "Laid-Off (Lack of work)." On September 14, 2017, DHS filed a protest letter, asserting that plaintiff voluntarily left his position, gave no prior notice of, or reason for, his separation to the agency, and did not return to work after his last day on August 6, 2017. DHS stated: "This severance (abandonment of the job) can in no way be attributable to either the employer (disabled client) or this agency."

¶ 4        On September 28, 2017, a claims adjudicator from IDES conducted an interview with plaintiff regarding his claim. Plaintiff told the adjudicator that he kept calling DHS to see if he was getting paid, "they kept give [*sic*] me the run around" and "they didn't know if Gov. Rauner was going to pay us or not." Asked whether he "stopped reporting because they weren't paying you," plaintiff responded, "Well yeah, you don't want to work for nobody if they not gon [*sic*] pay you." Asked whether he had a choice to remain employed, he responded, "Yes." Plaintiff told the adjudicator that, before he left, he did not inform his employer he was leaving and he did not take any steps to explain or resolve the situation. In response to the question why he did not attempt to explain or resolve the situation before he left, plaintiff responded: "I just started looking for a new job. I have a family and I couldn't just keep going to work and not getting paid." Plaintiff stated that the incident violated the original hiring agreement because "they didn't live up to their agreement saying we was gon [*sic*] be paid."

¶ 5        The adjudicator could not reach DHS to conduct an interview. On October 6, 2017, the adjudicator denied plaintiff's claim for unemployment benefits. The adjudicator's written order found that the evidence showed plaintiff "voluntarily" left his employment at DHS "because he did not receive payment of wages when due." It stated that plaintiff alleged "he was not being paid by DHS but failed to provide proof of non payment." The adjudicator found plaintiff ineligible for benefits, concluding he "left work voluntarily without good cause attributable to the employer."

¶ 6        Plaintiff filed a request to reconsider the adjudicator's decision. In his written request to reconsider, he asserted that he did not quit voluntarily and was "let [g]o [d]ue [t]o [l]ack of [p]ayment." He asserted he was not getting paid because DHS kept losing his "worksheet for signing in" and a supervisor told him he "should be getting paid if not I should not be working." To his request for reconsideration, defendant attached an unsigned letter dated October 9, 2017, from a "Home Services Provider" on DHS letterhead, stating that "[t]his letter is to notify you that your position with the Department of Human Services was terminated on July 6, 2017 due to lack of work."

¶ 7        The adjudicator's decision was affirmed, and plaintiff appealed to an IDES referee. The referee conducted a hearing by telephone. Plaintiff was the only party present at the hearing because the referee was unable to reach the DHS representatives.

¶ 8        Plaintiff testified that, from November 2016 to July 2017, he provided adult care services as a personal assistant for DHS. Asked why he stopped working, plaintiff testified as follows:

> "They kept *** saying *** every time the pay period came around, um, the supervisors at some of the different sites or because you got different supervisors ***, you'll get this answer, you'll get that answer *** the bottom line, everybody was waiting on Governor Rauner to release the money to pay the aging people."

Plaintiff did not know how much money DHS owed him and testified he "had just really just given up." He testified that "I've never quit. I never bothered to leave, I just felt that they wasn't doing what *** they obligation was that they told me. I didn't have nobody fighting for me. I didn't have nobody, you know, saying, *** 'this person needs to be getting paid.' " Plaintiff testified that he did not file a wage and hour claim with the Department of Labor, noting that "this is my first time doing this" and people told him to get a lawyer but he did not have any money to pay a lawyer. Plaintiff testified he did not have copies of his time sheets with him "because I had to *** where I was at, it got flooded out." The referee told plaintiff that DHS "sent in a report saying that they've paid you during this period of time." The referee also asked plaintiff if he would have stayed if DHS would have paid him, and he responded, "Yes."

¶ 9        Plaintiff testified at the hearing that "the supervisor from the last person that called me, they told me all I had to do was just go get the letter from DHS, saying that they had released me and I didn't voluntary quit." The referee noted that the letter to which plaintiff was referring and had submitted was unsigned and contradicted what plaintiff was telling the referee, as the letter stated plaintiff was laid off.

¶ 10       The referee affirmed the adjudicator's determination. In its written order, it found that plaintiff separated from work on August 6, 2017, "when for unknown reasons he stopped reporting for work." The referee stated that plaintiff "insisted that he left work because he never received pay for any of his work" and he never "submitted an accounting of the wages he claims are due." The referee noted that plaintiff submitted an unsigned letter indicating he was laid off due to lack of work, which contradicted his claim that he left because he was not getting paid. The referee also stated that "[a]lthough the employer did not appear, it did protest that the claimant abandoned his job and it did, throughout the term of his employment, report the claimant's wages to the agency." The referee found plaintiff ineligible for unemployment benefits, concluding that plaintiff's claim that DHS did not pay him lacked credibility and that "[w]hatever his reason or reasons for leaving may have been, it has not been shown to be for good cause attributable to the employer."

¶ 11 Plaintiff appealed the referee's decision. In plaintiff's written appeal, he asserted he "did not [q]uit but was laid off, due to [l]ack of work" and he was working "for a company that had stopped paying due to the state budget that was out of my hands." To his appeal, he attached a signed letter from a "Home Services Provider," stating his position with DHS "was terminated on July 6, 2017 due to lack of work." The Board affirmed the referee's decision denying plaintiff benefits. In its written order, the Board noted that it reviewed the entire record, it found it unnecessary to take further evidence, and it concluded that the referee's decision was supported by the record and law. The Board incorporated the referee's decision as part of its decision.

¶ 12 Plaintiff filed a *pro se* complaint for administrative review with the trial court. The trial court affirmed the Board's decision. The record on appeal does not contain a transcript from the trial court's hearing on plaintiff's complaint for administrative review. Plaintiff now appeals the trial court's order affirming the Board's decision.

¶ 13 II. ANALYSIS

¶ 14 Initially, we note that, as a reviewing court, we are entitled to the benefit of clearly defined issues with pertinent authority cited and cohesive legal arguments. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11. Illinois Supreme Court Rule 341(h) (eff. Jan. 1, 2016) governs the content and format of appellate briefs, and these rules are mandatory. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. A party's status as a *pro se* litigant, as here, does not relieve him of his obligation to comply with appellate rules. *Fryzel v. Miller*, 2014 IL App (1st) 120597, ¶ 26.

¶ 15 Plaintiff's brief does not comply with Rule 341(h). We recognize that plaintiff attempted to comply with the rules, as he submitted his brief on a form approved by the Illinois Supreme Court. However, the content in the sections of the form that he completed do not contain any citations to legal authority or appropriate references to pages of the record. See Ill. S. Ct. R. 341(h)(6), (7) (eff. Jan. 1, 2016). This court is not a repository into which an appellant may foist the burden of argument and research. *Enadeghe v. Dahms*, 2017 IL App (1st) 162170, ¶ 23. Accordingly, we may decline to address any arguments that do not contain appropriate citation. *Id.*

¶ 16 Even though plaintiff's brief does not comply with Rule 341(h), we will not dismiss the appeal based on the deficiencies of his brief. Because the record is short and we have the benefit of appellees' cogent brief, we find that plaintiff's failure to adequately comply with Rule 341(h) does not preclude our review. Thus, we will review his appeal. See *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005) (" '[T]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review.' " (quoting *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035 (2000))).

¶ 17 On appeal, plaintiff challenges the trial court's order affirming the Board's decision finding him ineligible for unemployment benefits because he voluntarily left work without good cause attributable to the employer, DHS. The State argues that the Board's finding that plaintiff "quit his job" was not against the manifest weight of the evidence and the Board did not clearly err when it determined that plaintiff voluntarily left his employment without good cause attributable to DHS.

¶ 18     When we review an administrative proceeding, we review the Board's decision, not the trial court's decision. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 819 (2009). When reviewing an unemployment benefits claim, we defer to the Board's factual findings unless they are against the manifest weight of the evidence. *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 556 (2006). "If there is any evidence in the record to support the Board's decision, that decision is not contrary to the manifest weight of the evidence and must be sustained on review." *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16. Further, the Board must determine the credibility of the witnesses and the weight of the evidence and resolve conflicts in the testimony. *Jackson v. Department of Labor, Board of Review*, 168 Ill. App. 3d 494, 499 (1988). We may not substitute our judgment for that of the Board. *Chicago Transit Authority v. Doherty*, 291 Ill. App. 3d 909, 912 (1997).

¶ 19     The question of whether an employee left work without good cause attributable to his employer involves a mixed question of law and fact. *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 942 (2010). The question is factual because it requires considering whether the facts support the Board's finding that plaintiff left work without good cause. *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 32. The question is also legal because discharge and constructive voluntary leaving are legal terms and concepts, which require interpretation. *Id.*

¶ 20     When we review a mixed question of law and fact, we use the clearly erroneous standard. *Id.* Under this standard, we will only overturn the Board's decision to deny unemployment benefits if we are left with a " 'definite and firm conviction,' " based on the entire record, that the Board's decision was a mistake. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22 (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001)).

¶ 21     When the Board finds that the referee's decision is supported by the record, incorporates the referee's decision into its decision, and makes no additional findings, as here, we review the referee's findings of fact and conclusion of law to determine whether the Board's decision was clearly erroneous. *Id.* The referee here found plaintiff ineligible for unemployment benefits under section 601(A) of the Act, which provides that an individual is ineligible for benefits if he left work voluntarily without good cause attributable to the employer (820 ILCS 405/601(A) (West 2016)).

¶ 22     The Act provides economic relief to those who are involuntarily unemployed. *AFM Messenger Service Inc.*, 198 Ill. 2d at 396. The Act is to be liberally construed to protect individuals from "severe economic insecurity resulting from involuntary unemployment." *Henderson v. Department of Employment Security*, 230 Ill. App. 3d 536, 538 (1992). Under the Act, an employee may receive unemployment benefits if he meets the eligibility requirements and is not subject to any disqualifications or exemptions. *Caterpillar, Inc. v. Doherty*, 299 Ill. App. 3d 338, 342 (1998). Under section 601(A) of the Act, a person is ineligible for benefits if he voluntarily left work without good cause attributable to the employer. 820 ILCS 405/601(A) (West 2016). It is the employee's burden to prove he is eligible for unemployment benefits. *Arroyo v. Doherty*, 296 Ill. App. 3d 839, 844 (1998).

¶ 23     Good cause for leaving employment has been interpreted as "that which justifies an employee to leave the ranks of the employed and join those of the unemployed." *Acevedo v. Department of Employment Security*, 324 Ill. App. 3d 768, 772 (2001). "A substantial and

unilateral change in employment may render employment unsuitable so that good cause for voluntary termination is established ***." *Id.* An employee's dissatisfaction with the number of hours or wages does not constitute good cause to leave employment. *Collier v. Department of Employment Security*, 157 Ill. App. 3d 988, 992 (1987). However, depending on the surrounding circumstances, "[a] reduction in pay may constitute 'good cause.' " *Henderson*, 230 Ill. App. 3d at 539. When determining whether good cause exists, the focus is on the conduct of the employer, not the conduct of the employee. *Doherty*, 291 Ill. App. 3d at 914.

¶ 24    Here, we remand for the Board to conduct a fact finding hearing to determine the reason or reasons why plaintiff left work and whether he left voluntarily or involuntarily. Plaintiff asserted during the interview with the claims adjudicator and in his testimony at the hearing before the referee that he stopped reporting to work because he was not getting paid. In plaintiff's appeal to the referee, he stated he did not voluntarily quit and was "[l]et [g]o [d]ue to [l]ack of payment" and attached an unsigned letter from a "Home Services Provider," stating that he was terminated on July 6, 2017, "due to lack of work." In his appeal to the Board, he attached the same letter but with a signature.

¶ 25    As a reviewing court, we must defer to the Board's factual findings, unless they are against the manifest weight of the evidence. The Board has the responsibility to weigh the evidence, determine the credibility of the witness, and resolve conflicts in the testimony. *Jackson*, 168 Ill. App. 3d at 499. However, the referee never made a factual finding regarding why plaintiff left work and whether he left involuntarily or voluntarily. Rather, the referee found that plaintiff "separated from work" on August 6, 2017, "when for *unknown reasons* he stopped reporting for work" and concluded that *"[w]hatever his reason or reasons for leaving may have been*, it has not been shown to be for good cause attributable to the employer." (Emphases added.) Accordingly, because the Board did not make a factual finding regarding whether plaintiff voluntarily left work, we remand to the trial court to remand to the Board to conduct a fact finding hearing to determine whether his "separation" from work was involuntary or voluntary and the reason or reasons he left work, *i.e.*, terminated due to the lack of work available for him to do, terminated due to his lack of work on the job to which he was assigned, lack of payment for work performed, or his belief that he was not getting paid for work he was doing or for work he had already performed.

¶ 26    Because we are remanding for further fact finding, we will not address whether the Board clearly erred in finding plaintiff ineligible for unemployment benefits under section 601(A) the Act. We are also not deciding whether an employee's decision to stop reporting to work because he or she is not getting paid is considered involuntarily or voluntarily leaving under the Act. However, if after further fact finding, the Board finds that the reason plaintiff left work was because he was not getting paid for work he was doing or for work he already performed, then it will have to decide this question. If the Board finds that the reason plaintiff left work was because he was terminated "due to the lack of work [available]," his reason for leaving work cannot be considered voluntary. See *Jones v. Department of Employment Security*, 276 Ill. App. 3d 281, 285 (1995) (where plaintiff was discharged after she returned from work following a leave of absence, this court found that the termination of employment was involuntary).

¶ 27    Further, we note that, as a reviewing court, we have "a duty to examine the procedural methods employed at the administrative hearing to ensure that a fair and impartial procedure was used." *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 41 (2000). "A fair hearing

before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 95 (1992). The administrative agency's findings "must be based on evidence admitted in the case, and nothing can be treated as evidence that is not admitted as such." *Anderson*, 314 Ill. App. 3d at 41.

¶ 28    Here, plaintiff testified at the hearing before the referee that DHS was not paying him, and the referee told plaintiff that DHS "sent in a report saying that they've paid you during this period of time." The record does not show that the referee showed plaintiff a copy of this report or that plaintiff had a copy of it. The referee stated in its decision that, although DHS did not appear, "it did, throughout the term of his employment, report the claimant's wages to the agency." It is plaintiff's burden to prove he is eligible for unemployment benefits. *Arroyo*, 296 Ill. App. 3d at 844. However, this "report" from DHS that the referee referenced when it found that plaintiff's claim of nonpayment lacked credibility is not contained in the record. Thus, the Board did not have it when it affirmed the referee's decision. Given that "[t]he findings of the administrative agency must be based on evidence admitted in the case, and nothing can be treated as evidence that is not admitted as such" (*Anderson*, 314 Ill. App. 3d at 41), it would have been better practice for the Board to demand this document from DHS when it reviewed and affirmed the referee's decision.

¶ 29    Finally, we note that plaintiff asserts that the trial court erred by "not accepting the signed document" from DHS, which validated that his case was dismissed in error and proved that his unemployment benefits should not have been denied. He also asserts he was "told that new evidence could not be presented at the trial court." As previously discussed, when we review an administrative proceeding, we review the Board's decision, not the trial court's decision. *Sudzus*, 393 Ill. App. 3d at 819. However, when a party appeals the decision of an administrative agency to the trial court, "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court." 735 ILCS 5/3-110 (West 2016). Accordingly, the trial court did not err when it, as plaintiff asserts, did not accept "the signed document" from DHS and when he was "told that new evidence could not be presented at the trial court."

¶ 30                                    III. CONCLUSION

¶ 31    For the reasons explained above, we reverse and remand to the trial court with directions to remand this case to the Board for a fact finding hearing on plaintiff's claim for unemployment benefits.

¶ 32    Reversed and remanded.

¶ 33    JUSTICE LAVIN, dissenting:

¶ 34    I respectfully dissent. It is abundantly clear that appellant's brief does not comply with the applicable rules. See Ill. S. Ct. R. 341 (eff. Jan. 1, 2016). As below, appellant has not supplied any meaningful documentary evidence to back up his claim for unemployment benefits. Most notably, he never provided any proof of nonpayment by the DHS, which is the entire basis of his claim. The burden of proving eligibility for benefits rests on the claimant, not the employer. *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 943 (2010). Thus, this entire claim has been forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (requiring that

argument contain citations to the pages of the record where supporting evidence may be found); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56 (stating that the failure to comply with Rule 341 results in forfeiture).

¶ 35    Furthermore, appellant has not cited any evidence or supplied any appropriate argument to support the notion that the findings of the Board or the referee were clearly erroneous. *Lojek*, 2013 IL App (1st) 120679, ¶ 32. The referee specifically found that appellant left his employment without good cause attributable to DHS. The Board came to the same conclusion, and nothing in appellant's brief gives any legal reason to reverse these decisions. We are obligated to give great deference to the factual findings of the referee and the Board, and these findings are not against the manifest weight of the evidence, since appellant supplied no documentary evidence to back up his claim. *Manning*, 365 Ill. App. 3d at 556. To the extent that the majority relies on the incomplete state of the record, that procedural deficiency requires us to affirm the judgment, not remand for further proceedings. *Board of Education of Rich Township High School District No. 227 v. Brown*, 311 Ill. App. 3d 478, 486 (1999) (stating that the burden of providing a sufficient record belongs to the party appealing an administrative agency's decision).

¶ 36    The majority's granting of a judicial "mulligan" in the form of a remand for a new hearing is entirely inappropriate, and I therefore dissent.