2020 IL App (1st) 192119-U

No. 1-19-2119

Order filed November 10, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| LA TOYA D. LUCAS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF EMPLOYMENT SECURITY; | ) | No. 19 L 50436 |
| DIRECTOR OF DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY; BOARD OF REVIEW; and CSL PLASMA, | ) | |
| INC. C/O UC EXPRESS ADP, INC., | ) | Honorable |
| | ) | Daniel P. Duffy, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the Board of Review of the Department of Employment Security decision denying plaintiff's unemployment benefits because it is not clearly erroneous.

¶ 2    Plaintiff La Toya Lucas appeals *pro se* from the circuit court's order affirming the administrative decision of defendant, the Board of Review (Board) of the Illinois Department of

Employment Security (IDES), denying her unemployment benefits. The Board found plaintiff voluntarily left her employer, CSL Plasma, Inc (Plasma), without good cause attributable to the employer. We conclude that the Board's finding was not clearly erroneous, and we therefore affirm the circuit court's decision.

¶ 3 Plaintiff initiated a claim for unemployment benefits under the Unemployment Insurance Act (Act) (820 ILCS 405/100 *et seq.* (West 2018)) on January 20, 2019.[1] During a telephone interview with an IDES claims adjudicator, plaintiff stated she was employed as a donor technician at Plasma starting in August 2017. Her last day of employment was January 15, 2019. Plaintiff's job included taking donors' blood pressure, testing their iron and protein levels, and answering their questions. Plaintiff left her employment due to issues with the assistant center manager, Dionne Freeman, who did not keep plaintiff's personal information confidential, gossiped about employees, and failed to protect plaintiff from aggressive donors who came into the center. Freeman additionally harassed plaintiff about her hair color, stood behind her while she worked, and followed her to the restroom. Plaintiff acknowledged she had a choice to remain employed and, after speaking with a different manager who failed to address her concerns, she decided not to return to Plasma after her vacation. She did not tell anyone she was leaving.

¶ 4 On February 13, 2019, the claims adjudicator found plaintiff was ineligible for unemployment benefits pursuant to section 601A of the Act (820 ILCS 405/601A (West 2018)). Although plaintiff left her job at Plasma for personal reasons attributable to the employer, she

---

[1] There is no copy of plaintiff's claim in the record on appeal. However, the IDES notice of claim included the record states the "date of claim" as January 20, 2019.

failed to "exhaust reasonable alternatives in an effort to correct the situation prior to leaving" and thus left voluntarily without good cause attributable to the employer.

¶ 5    Plaintiff appealed the determination. On March 29, 2019, an IDES administrative law judge (ALJ) conducted a telephone hearing at which plaintiff and Plasma center manager Tangerine Tingle testified. Plaintiff testified that she had been a donor technician receptionist for Plasma from August 2, 2017, until January 2019. Her last day of "physical" work was January 15, 2019. She resigned from Plasma due to harassment by Freeman, the assistant center manager, which had been occurring since the end of 2017.

¶ 6    Freeman harassed plaintiff about her hair color. Plaintiff was hired with fuchsia pink hair but changed it to dark blue because she "figured that [pink] was too bright for the workplace." When plaintiff dyed her hair blue, "[t]hat became an issue" for Freeman, who informed her she needed a natural hair color pursuant to the employee handbook. When the issues between her and Freeman regarding her hair color arose, plaintiff spoke with a manager, "Nicki," about Freeman's treatment of her. According to plaintiff, Nicki "got tired of the back and forth with the hair color" and told Freeman she did not see the problem with plaintiff's hair since it did not affect her work performance. Freeman then spoke with "Tasha," the associate director of operations. Tasha came into Plasma several times and saw plaintiff's hair color but said nothing about it. Based on the lack of reaction from higher management, plaintiff believed Freeman had personal issues with her.

¶ 7    When nothing was done about plaintiff's hair, Freeman started finding other issues with plaintiff, such as her restroom and lunch habits and her work performance. Freeman would stand behind plaintiff and watch her work. Plaintiff specified that it was her responsibility to call the next donor after she had prepped her booth. In some cases, if there was a blood spill or if a donor

had a personal hygiene odor, plaintiff would sanitize the booth before calling the next donor. However, Freeman started calling the next donor to plaintiff's booth before she was ready. When plaintiff brought the issue to Freeman's attention, Freeman responded that she did not need to clean the booth between each donor. Plaintiff also complained that managers were "gossiping about employees" and had disclosed her medical information about times she had been sick. Additionally, Freeman told plaintiff that she needed to bring a doctor's statement for her frequent urination.

¶ 8    Plaintiff complained to Jesus Costello, the associate director of operations, in November 2018. During their meeting, Costello told plaintiff that he was going to fire 6 to 7 employees and hire 12 to 15 more, which did not concern plaintiff. Plaintiff explained her issues with Freeman to Costello. She added that donors had threatened her and Freeman "never did anything." Costello responded that Freeman was a great worker and stayed overtime to help out. He did not tell her that he would speak with Freeman to get her side of the story or offer to meet with both of them to try to resolve their issues. Plaintiff never heard from Costello, so she called him a week later to follow up and left a message on his cell phone. Costello did not return her call.

¶ 9    Plaintiff then spoke with Craig Soderholm, the human resources "business consultant." She explained her issues with Freeman to Soderholm over the phone and that she had not heard back from Costello. Soderholm said he would look into the issues but did not call her again. Plaintiff subsequently spoke to the center manager, Tangerine Tingle, several times regarding Freeman's "harassment *** and things like that." Tingle looked into it, but "everything kind of faded away." Plaintiff stated she "exhausted everything that [she] could possibly do," and there was nothing else

she could do "but leave, stressed out." Freeman humiliated her and made her feel ashamed of defending herself "against the evil donors."

¶ 10    Tingle testified that she was the center manager at Plasma starting December 30, 2018. Tingle denied that plaintiff's issues with Freeman were brought to her attention. She acknowledged that she addressed an issue between plaintiff and a donor and the donor had been "deferred." However, Tingle was not aware of any "past history" with Freeman and plaintiff. Plasma had a harassment policy, which included "the chain of command," where an employee could complain to the center manager, the "ADOQ," the regional director, and then the regional director's boss. There was also a confidential hotline to make an anonymous complaint. Further, an employee could go to a human resources business partner.

¶ 11    Tingle was unaware of plaintiff filing a complaint according to the harassment policy. She had experience with employee harassment at Plasma, and in her experience, it was "taken very seriously, especially when it's management *** to employee." She specified that someone had made accusations against her at another center and "every avenue was exhausted." They conducted interviews and investigations. Thus, Tingle was "fully aware of when such a claim has been made with regards to the company," which did not tolerate that behavior.

¶ 12    Tingle's records showed plaintiff was employed until January 28, 2017, although her last day of "physical" work was January 15, 2017. Plaintiff did not inform Tingle that she was resigning. An assistant manager informed Tingle of plaintiff's resignation by notifying her that plaintiff was "coming to pick up her things." The assistant manager "went through the process of *** processing [plaintiff] out on a healthy note." Tingle did see plaintiff when she came to retrieve

her belongings, but plaintiff never notified her that she was leaving due to harassment from Freeman.

¶ 13    Plaintiff questioned Tingle about plaintiff's last day at Plasma, stating her last day was January 15, 2019. She went on vacation until January 23, 2019, and "just never went back after the vacation." Tingle responded that plaintiff's failure to report back to work after her vacation was job abandonment, and she then received notice plaintiff resigned. Tingle clarified that on the day plaintiff returned to pick up her belongings, plaintiff did not request to speak with her.

¶ 14    Following the hearing, the ALJ affirmed the adjudicator's determination that plaintiff was disqualified for unemployment benefits pursuant to section 601A. Specifically, the ALJ found plaintiff "quit" her job because she felt she was being harassed by her immediate supervisor but that plaintiff left voluntarily "for what she perceived to be compelling personal reasons," and those reasons were not attributable to her employer.

¶ 15    Plaintiff appealed the ALJ's decision to the Board. On June 21, 2019, the Board affirmed the ALJ's determination that plaintiff was ineligible for benefits. The Board relied on the evidence presented at the March 29, 2019, telephone hearing and found no further evidentiary proceedings necessary. It found that (1) plaintiff abandoned her job after not returning following her vacation, (2) plaintiff failed to notify the employer that she was leaving, (3) Tingle's unrefuted and credible testimony showed plaintiff failed to reach out to her concerning Freeman's behavior, and (4) the record showed plaintiff failed to exhaust reasonable means of remaining employed as an alternative to collecting unemployment benefits.

¶ 16    The Board found the evidence, at best, established a dislike or friction between plaintiff and Freeman, not that Freeman's conduct was such as to render plaintiff's work "unsuitable." The

Board found plaintiff failed to present credible testimony and documentary evidence showing she was subjected to conditions rendering the job unsuitable for her. Accordingly, the board found plaintiff voluntarily left her employment for personal reasons not attributable to her employer.

¶ 17    Plaintiff filed a complaint for administrative review of the Board's decision in the circuit court of Cook County. On October 15, 2019, following oral arguments, the circuit court affirmed the Board's decision.

¶ 18    On appeal, plaintiff asks that we reverse the judgment below, arguing the circuit court made various erroneous factual findings.

¶ 19    As an initial matter, we note plaintiff's brief contains deficiencies under Illinois Supreme Court Rules 341 and 342, which hinder our review. For example, plaintiff's "Points and Authorities" section does not contain citations to cases or statutes; she fails to set forth the applicable standard of review; and her brief does not include a table of contents, the decision of the Board, the notice of appeal, or a table of contents to the record on appeal. See Ill. S. Ct. R. 341(h)(1), (3) (eff. May 25, 2018); Ill. S. Ct. R. 342 (eff. July 1, 2017). Crucially, plaintiff's brief does not contain any reference to relevant legal authority in violation of Rule 341(h)(7). See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 20    Plaintiff's status as a *pro se* litigant does not excuse her failure to comply with the supreme court rules concerning appellate briefs. *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 45. When a party fails to comply with these procedural rules, we may strike the brief and dismiss the appeal. *Id*. However, as we have the benefit of the Board's cogent brief and understand the issues, we will exercise our discretion and address plaintiff's appeal on the merits. See *Id*. ¶ 48.

¶ 21    Plaintiff contends on appeal that the circuit court (1) mistakenly concluded she failed to speak with Tingle prior to leaving her employment, (2) failed to "closely pay[] attention to the ongoing harassment from [Freeman]," and (3) failed to acknowledge that she reached out to "all higher authority when the situation of harassment escalated."

¶ 22    When reviewing an appeal from the circuit court's review of a decision by the Board, we review the final decision of the Board, not the referee's decision or the circuit court's ruling. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22. The standard of review we employ depends on the nature of the issue presented. As the trier of fact, the Board's factual findings are *prima facie* true and correct, and we will not reweigh the evidence or substitute our judgment for that of the Board. *Matlock v. Illinois Department of Employment Security*, 2019 IL App (1st) 180645, ¶ 18. We must affirm the Board's findings of fact unless they are against the manifest weight of the evidence, *i.e.*, unless the record contains no evidence to support those findings. *Id.*

¶ 23    However, the ultimate issue before the Board — whether plaintiff left work voluntarily without good cause attributable to her employer such that she was ineligible for unemployment benefits — presents a mixed question of law and fact we review under the less deferential "clearly erroneous" standard. *Petrovic*, 2016 IL 118562, ¶ 21; *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 942 (2010). "An agency's decision is clearly erroneous if, based on the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Petrovic*, 2016 IL 118562, ¶ 21.

¶ 24    The Act provides "economic relief to employees who, through no fault of their own, become 'involuntarily unemployed.' " *Universal Security Corp. v. Department of Employment*

*Security*, 2015 IL App (1st) 133886, ¶ 9 (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 396 (2001)). Pursuant to section 601A of the Act, an individual is ineligible for unemployment benefits where she has left work voluntarily without good cause attributable to her employer. 820 ILCS 405/601(A) (West 2018).

¶ 25   A voluntary leaving is one where the individual has the option to remain employed by the employer. 56 Ill. Adm. Code 2840.101(a) (2018). To constitute voluntary leaving attributable to the employer, the cause for leaving must be within the employer's control, "which may include, but is not limited to, situations in which the employer has implemented a substantial change in the employment conditions." *Lojek*, 2013 IL App (1st) 120679, ¶ 36. This court has concluded that "good cause" for voluntarily leaving one's employment " 'results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.' " *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 36 (quoting *Collier v. Department of Employment Security,* 157 Ill. App. 3d 988, 992 (1987)). However, an employee must make a reasonable effort to resolve the cause of the leaving when such effort is possible before joining the ranks of the unemployed. *Id*.

¶ 26   Plaintiff does not argue that the Board erred in finding her ineligible for unemployment benefits on the basis that she left Plasma voluntarily and her leaving was not attributable to her employer. Her only arguments are directed to challenging the circuit court's factual findings. "Both argument and citation to relevant authority are required. An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of the rule." *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010). Consequently, we have no choice but to find

forfeiture of the ultimate issue in this case, and must affirm the judgment below. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not argued are forfeited); *Vancura*, 238 Ill. 2d at 373 (judgment affirmed where party failed to comply with supreme court rules concerning appellate briefs, resulting in forfeiture of review).

¶ 27   Even excusing the deficiencies in plaintiff's brief, we would nevertheless affirm the Board's determination that plaintiff was ineligible for benefits because that judgment was not clearly erroneous. The record before us supports the Board's conclusion that plaintiff failed to exhaust reasonable means of remaining employed and instead abandoned her employment following her vacation. Plaintiff's own admissions demonstrate she voluntarily left her employment, deciding not to return after her vacation. She testified that she resigned from her job.

¶ 28   Because plaintiff voluntarily left her employment, she was required to show that she left upon good cause attributable to her employer. Although plaintiff testified regarding her issues with Freeman, which she felt constituted harassment, she failed to demonstrate " 'circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.' " *Lojek*, 2013 IL App (1st) 120679, ¶ 36 (quoting *Collier,* 157 Ill. App. 3d at 992). The Board found that plaintiff presented no credible testimony demonstrating she was subjected to conditions making her job unsuitable, demonstrating, "at best," that there was friction and dislike between herself and the Board.  We defer to the Board's factual findings. *Matlock*, 2019 IL App (1st) 180645, ¶ 18.

¶ 29   Further, Tingle testified that she was familiar with Plasma's harassment policy, having been through it herself, and was unaware of any complaints plaintiff made about Freeman. Rather than pursuing her complaint further with Tingle, plaintiff instead resigned and decided not to return

following her vacation. Although plaintiff argues that the trier of fact mistakenly concluded she failed to speak with Tingle prior to leaving her employment, it was the Board's responsibility to determine the credibility of the witnesses, weigh the evidence, and resolve any conflicts in the testimony. *Matlock*, 2019 IL App (1st) 180645, ¶ 18. The Board found Tingle's testimony that plaintiff did not tell her about Freeman's alleged harassment to be credible, and we defer to that factual finding. *Id*. Thus, the record supports the Board conclusion that, before plaintiff resigned, she did not exhaust reasonable means of remaining employed as an alternative to collecting unemployment benefits. The Board's decision finding plaintiff ineligible for unemployment benefits under section 601A is not clearly erroneous.

¶ 30    For the foregoing reasons, the Board properly denied plaintiff's claim for unemployment benefits. Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 31    Affirmed.