2023 IL App (1st) 231361 & 231372 (consolidated)-U

FIRST DIVISION
December 26, 2023

Nos. 1-23-1361 & 1-23-1372 (cons.)

**NOTICE:**  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* THE FORMER MARRIAGE OF: | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| KENTON GIRARD, | ) | |
| | ) | |
| Petitioner/Appellant, | ) | |
| | ) | |
| and | ) | No. 2015 D 9633 |
| | ) | |
| JANE GIRARD, | ) | |
| | ) | |
| Respondent/Appellee | ) | |
| | ) | |
| MARISSA GIRARD, | ) | The Honorable |
| | ) | William S. Boyd, |
| Third-Party Respondent/Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.


**ORDER**

*HELD*:  As trial court order on appeal was not an injunction for purposes of permitting an interlocutory appeal, the instant appeal is dismissed for lack of jurisdiction.


¶ 1        In this post-decree dissolution of marriage proceeding, petitioner-appellant Kenton Girard

(Kenton) and third-party respondent-appellant Marissa Girard (Marissa) appeal from a trial

court order granting, in part, a petition filed by respondent-appellee Jane Girard (Jane) dealing with the deletion of certain social media posts. Although Kenton's and Marissa's appeals have been consolidated since they challenge the same trial court order, they have filed separate, but very similar, *pro se* briefs on appeal seeking the same relief: the vacation of the trial court's order. For the following reasons, we dismiss the appeal.

¶ 2                                      BACKGROUND

¶ 3       While this matter is relatively straightforward, some background information regarding the instant litigation is necessary to put the trial court's order at issue in context. We further note for the record that, while Kenton and Marissa have each chosen to appear *pro se* before this Court, they were both represented by counsel below; Jane has been represented by counsel throughout this litigation.

¶ 4       Kenton and Jane were married in 2003. They had two children, twin girls, born in 2008; at the time of the instant proceedings, and currently, those children are still minors. Kenton and Jane divorced in 2015 and, soon thereafter, Kenton married Marissa. Pursuant to their divorce, Kenton and Jane entered into a Joint Parenting Agreement and Custody Judgment, sharing joint legal custody of the girls. As typically happens, there were modifications in the children's living arrangements throughout the years; the record indicates that recently, the girls have been living mostly with Kenton and Marissa.

¶ 5       In May 2022, Jane initiated post-decree litigation by filing a motion to appoint a parent coordinator after, as Jane described, Kenton began making unilateral decisions for the children without consulting her, including terminating therapy for one of the girls,

prohibiting them from testing for COVID-19 at school, planning a trip without providing an itinerary, and telling her that he intended to remove them from the care of the pediatrician they have had since birth. Jane later filed a motion for the appointment of a guardian *ad litem* (GAL) and for the children to attend reunification therapy. The trial court appointed both a parent coordinator and a GAL and, in November 2022, it ordered family therapy and specifically prohibited the parties and their significant others from "[d]iscussing any aspect of the pending litigation with/or in the presence of the minor children" and from "[c]riticizing, demeaning, disparaging, and/or placing either party in a negative light with regard to the minor children."

¶ 6       Soon after, the parties filed a flurry of motions. For example, Kenton filed a "Motion to Enter Qualified Medical Support Order" asserting Jane was not assisting him in obtaining access to the children's medical insurance records or information. He also filed a motion to terminate family therapy. Jane filed a motion to join Marissa as a third party to the litigation, asserting that Marissa was inserting herself into the children's lives as a parent by, for example, referring to herself as their mother at their school, emailing their school superintendent in that capacity, and contacting a new medical provider in that capacity to attempt to switch the girls' doctor. The court joined Marissa to the litigation.

¶ 7       In July 2023, Jane filed the instant motion at issue, which she entitled "Emergency Petition for Temporary Restraining Order and for Other Relief." In it, she noted that within two days after meeting with their court-appointed custody evaluator, the girls "established and began utilizing old and new social media accounts" (which include their full names, the

3

high school they attend, and information about where they live) across various sites, including Tik Tok and Instagram, to post and share videos with information regarding the ongoing litigation between the parties. The posts contained false information about the litigation and inflammatory statements against the trial court and certain attorneys involved therein. Jane further noted that others were commenting on and reposting the children's posts, including adults who were leaving concerning comments and messages on their social media urging the now 15-year-olds to make contact and meet in person. Jane sought an order of the court deleting the posts, limiting the girls' access to social media and electronic devices, and requiring they not be permitted to make any social media posts regarding the divorce, the ongoing litigation, or those involved.

¶ 8    Both Kenton and Marissa filed responses to Jane's motion, asking the court to deny it. In his response, Kenton asserted that Jane's behavior, as well as the actions of the court in failing to conduct an interview of the children, "must have frustrated" them into making the posts and that, regardless, as Marissa had already asked them to remove the posts, Jane's petition was "moot." Likewise, in her response, Marissa also attributed the posts to Jane and the court's actions and sought to avoid the litigation between Kenton and Jane.

¶ 9    After appointing another legal representative for the children, on July 19, 2023, the trial court held a hearing. While a transcript of that hearing is not present in the record on appeal, the record demonstrates that the court spent approximately an hour with all counsels hearing

arguments and examining reports prepared by the children's representative and GAL.[1]  On July 25, 2023, the parties appeared before the trial court again to resolve disputes over the language to be used in memorializing its ruling.  During these proceedings, of which a transcript is included in the record on appeal, Jane brought to the court's attention that the children continue to make social media posts disparage the litigation and have now been speaking to journalists and attaching photographs of Jane's attorneys to their posts.

¶ 10    At that July 25, 2023 proceeding, the trial court entered an order granting "in part" Jane's motion, "specifically as to the deletion of social media postings as set forth herein and not allowing any further posting as set forth herein."  The order stated that Kenton and Marissa "shall oversee the deletion of all the minor children's social media postings which relate to the instant litigation," "shall instruct the minor children" not to create any future posts relating to the litigation, and "shall oversee and shall instruct the children not to communicate with or be interviewed by" any media.

¶ 11    Kenton's and Marissa's separate appeals followed, which this Court consolidated.

¶ 12                                   ANALYSIS

¶ 13    As noted, Kenton and Marissa challenge the trial court's order mandating that they oversee the deletion of the children's social media posts dealing with the instant litigation and that they instruct them not to create any future such posts.  For his part, Kenton contends that the order violates the First and Fourteenth Amendments in that it constitutes unlawful

---

[1] This is evidenced by the trial court's subsequent written order, which memorialized what occurred at the hearing and its contact with the parties.

prior restraint on speech, is overbroad and not narrowly tailored, is unduly vague and ambiguous, and violates the girls' rights to free speech and freedom of the press. Marissa reiterates some of Kenton's constitutional contentions and adds her own, asserting that the order violates the Illinois Code of Civil Procedure and should be vacated as an evidentiary hearing was never properly conducted.

¶ 14     We begin by noting for the record that Kenton's and Marissa's *pro se* briefs fail to meet many of the requirements for appellate briefs as found in Illinois Supreme Court Rule (Rule) 341. See Ill. Sup. Ct. R. 341 (eff. Feb. 6, 2013); See *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8 (compliance with rules governing briefs on appeal is compulsory regardless of a party's status). Missing from both are a cover, a table of contents, a Points and Authorities section, an appendix, and a sufficient Facts section necessary to the case, stated accurately without argument or comment. See *Matlock v. Illinois Department of Employment Security*, 2019 IL App (1st) 180645, ¶ 14, and *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11 (content and formatting rules are mandatory, *pro se* litigants are not absolved from these requirements, and we may choose to dismiss an appeal upon the failure to abide by them). While we would have the prerogative to dismiss this cause in light of these failures (see *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 80), we choose not to because we can make out the essence of Kenton's and Marissa's claims and we have the benefit of a cogent brief from Jane (see *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite appellant's Rule 341 violations).

¶ 15    However, while we do not dismiss the instant appeal on Rule 341 grounds, we nonetheless dismiss it as we lack jurisdiction to entertain its merits.

¶ 16    Both Kenton and Marissa assert this Court's jurisdiction under Rule 307(a)(1) (eff. Feb. 26, 2010), insisting that the trial court's order was interlocutory in nature. However, before ever considering the merits of a party's contentions on appeal, this Court has an independent duty to consider its jurisdiction. See *Village of Kirkland v. Kirkland Properties Holdings Co., LLC I*, 2023 IL 128612, ¶ 37 (reviewing court's jurisdiction is a threshold matter that must be addressed independently of a litigant's arguments and before considering an appeal's merits); accord *Secura Ins. Co. v. Illinois Farmers Ins. Co.*, 232 Ill. 2d 209, 213 (2009); *Barnai v. Wal-Mart Stores, Inc.*, 2023 IL App (1st) 220900, ¶ 13. In the instant cause, this requires us to determine, first, whether the trial court's order truly constitutes an injunction, as Kenton and Marissa insist. If it does not, then its entry was not an appealable interlocutory order under Rule 307(a)(1) and we lack jurisdiction to hear this appeal.

¶ 17    Per our review of the record, because we find that the order was not an appealable interlocutory order, we do not have jurisdiction and must dismiss this appeal.

¶ 18    The record shows that Jane entitled her motion "Emergency Petition for Temporary Restraining Order and for Other Relief." This might lead one to believe that the trial court's subsequent order partially granting her motion automatically renders that order an "injunction" because it required a party to do or refrain from doing a particular thing—here, requiring Kenton and Marissa to "oversee" the deletion of the children's social media posts regarding the litigation and "instruct" them not to make future such posts. As Rule 307(a)(1)

7

confers jurisdiction on appellate courts from orders granting injunctions, which usually require a party to do or not do something, the presumption, then, would be that our jurisdiction is inherent over this order.

¶ 19    However, our courts have consistently made clear that " '[n]ot every nonfinal order of a court is appealable, even if it compels a party to do or not do a particular thing.' " See *In re Marriage of Eckersall*, 2014 IL App (1st) 132223, ¶ 19 (quoting *In re A Minor*, 127 Ill. 2d 247, 260 (1989)). This is because what constitutes an appealable injunctive order under Rule 307(a)(1) depends on the substance of the cause of action, not on the form of the order. See *Eckersall*, 2014 IL App (1st) 132223, ¶ 19 (citing *A Minor*, 127 Ill 2d at 260). In other words, it is not the label placed by a party on her motion seeking relief that determines appellate jurisdiction but, rather, the substance, content and effect of the order subsequently issued by the trial court. See *Eckersall*, 2014 IL App (1st) 132223, ¶ 19. If the order is merely ministerial or administrative in nature, Rule 307(a)(1) does not confer jurisdiction on an appellate court because such orders do not adjudicate any substantive issues related to the litigation; but, if the trial court's order addresses or adjudicates a substantive issue related to the litigation, then jurisdiction is conferred and we may review it under Rule 307(a)(1). See *Eckersall*, 2014 IL App (1st) 132223, ¶ 19. Ultimately, we are to examine the character of an order within the context of the facts and relief sought in the case at hand in determining our jurisdiction, or lack thereof. See *Eckersall*, 2014 IL App (1st) 132223, ¶ 19 (citing *In re Marriage of Meyer*, 197 Ill. App. 3d 975, 978 (1990)).

¶ 20 In the instant cause, the trial court's order requiring Kenton and Marissa to oversee the deletion of the children's litigation-related social media posts and to instruct them not to make any future such posts was not an appealable injunctive order over which we have jurisdiction under Rule 307(a)(1). Yes, Jane had labeled her motion as one for injunctive relief, and yes, the court technically did order Kenton and Marissa to "do" something. However, the substance of the court's order was to temporarily, and limitedly, regulate the conduct of the parents here; that is, it ordered that when the children are in their custody and control, they, as parents, are to ensure that the girls' social media is clear of any postings related to the litigation and that they do not make any future such posts. The order did not affect or adjudicate any substantive issue between Kenton and Marissa on one end and Jane on the other. For example, it did not make any determination as to any allegations raised by the parties as to family therapy, abuse of parenting time, impermissible unilateral decision-making, or any of the other topics they have raised throughout the litigation. Rather, with this order, the court merely entered a preventative measure designed to control the situation among the parties—one that involved the best interests of two teenage girls who, via the content of their social media posts about the litigation, which included private and sensitive information about their identities and whereabouts, were being contacted by others, including adult strangers, who were leaving concerning comments on their social media specifically in response to their posts about the litigation and sending messages to them, including invitations to meet in person. Clearly, the court was regulating the behavior of the parties so that, as the litigation progressed, those involved, including the children, would be protected

before anything bad were to happen—to them, the parties, their attorneys, the GAL, the children's representatives, or the trial court, all of whom were mentioned in the posts, which were clearly gaining a (negative) following.[2] This, the court had every right to do, and its order did nothing to affect any substantive issues pertinent to the litigation. See, *e.g.*, *Eckersall*, 2014 IL App (1st) 132223, ¶¶ 23, 25-26 (in divorce proceeding, and particularly under the Marriage and Dissolution of Marriage Act, trial court has broad discretion over, and may arrive at terms and conditions that serve, the best interest of minor children, which is superior to all other interests, including interest of the parents).

¶ 21       This cause is factually similar and legally analogous to *In re Marriage of Eckersall*, 2014 IL App (1st) 132223, and merits the same result. In *Eckersall*, shortly after the parties initiated divorce proceedings, a dispute arose regarding visitation and the husband requested the trial court set a temporary parenting schedule. In response, the trial judge, who incidentally was the same trial judge who presided over the instant cause, entered what was labeled a "custody/visitation injunctive order" prohibiting the parties from engaging in specific types of conduct when the children were in their custody.[3] See *Eckersall*, 2014 IL App (1st) 132223, ¶¶ 7-8. The mother appealed, asserting, much as Kenton and Marissa do,

---

[2] The record here reveals that there was a request for, and the trial court considered during this litigation, the issuance of an official gag order. Additionally, the girls' GAL expressed in her reports and recommendations her belief that "the girls have unfortunately been too involved in this litigation" and that certain parties had been treating the trial court's orders, such as attendance at family therapy, as "optional" rather than legally obligatory.

[3] This included refraining from discussing the litigation in their presence, questioning their preferences regarding custody and visitation, coaching them for court interviews, electronically surveying each other and them, and criticizing each other in their presence. See *Eckersall*, 2014 IL App (1st) 132223, ¶ 8.

that the trial court violated certain rights, including her right to parent and rights involving free speech. See *Eckersall*, 2014 IL App (1st) 132223, ¶ 15.

¶ 22    Before entertaining the substance of the appeal, our Cour considered whether it had jurisdiction. See *Eckersall*, 2014 IL App (1st) 132223, ¶ 18. The wife automatically assumed we did pursuant to Rule 307(a)(1), since the order was labeled an "injunctive order." See *Eckersall*, 2014 IL App (1st) 132223, ¶ 2. We found, however, that we did not, as, despite its label, the order entered by the trial court did not constitute an injunction.

¶ 23    Just as we have herein, our Court in *Eckersall* began by noting that it is not the title of an order or the fact that it may require a party to do or not do something that confers jurisdiction; rather, the content of the order must be examined within the context of the particular litigation to determine whether it deals with a substantive matter involved (thereby triggering our jurisdiction), or whether it is something the court has imposed on the parties in an administrative or ministerial sense to regulate their behavior as the matter progresses (which would not confer our jurisdiction). See *Eckersall*, 2014 IL App (1st) 132223, ¶ 19. Turning to the content of the order itself, we found that its effect and aim was to simply place terms and conditions on the parties' visitation rights, that is, to regulate them in the children's best interest and preclude the parties from engaging in specified conduct (which the trial court had detailed) that would be detrimental to their welfare. See *Eckersall*, 2014 IL App (1st) 132223, ¶ 20. Contrary to its label, the order did not provide any injunctive relief. Instead, it assigned temporary instructions—"rules of the road" as our Court coined it—for the parties while navigating the litigation. *Eckersall*, 2014 IL App (1st) 132223, ¶ 26 (citing

11

*Khan v. BDO Seidman, LLP*, 2012 IL App (4th) 120359, ¶ 49, to reason that "[o]rders by their nature assign burdens and limits," but this does not automatically make them injunctive; where an "order merely assigns temporary and modifiable burdens and limits on both parents when the children are in their care," no injunctive relief can be said to have been ordered). We noted this was the trial court's prerogative based on many reasons, including the fact that divorce leads to "poor decisions on the part of parents," courts are to place the best interest of the children above the interest of parents to prevent them from becoming pawns, and, since divorce exposes children to negative behavior that can have long-lasting repercussions on them, "precautions are preferable to remedial measures, prevention is preferable to punishment, and court ordained protocol is preferable to parental anarchy." *Eckersall*, 2014 IL App (1st) 132223, ¶ 28. As we stated, orders like this are not only permissible, but also "a wise and often necessary tool that diligent and experienced child representatives or GALs, parents' attorneys, and *judges* will insist on" (emphasis added). *Eckersall*, 2014 IL App (1st) 132223, ¶ 14. Concluding, then, that the order was only ministerial because it merely set temporary terms and conditions for visitation, no injunctive relief had been granted by the trial court under Rule 307(a)(1) and, thus, we had no jurisdiction to address the appeal. See *Eckersall*, 2014 IL App (1st) 132223, ¶ 30. See also *In re T.M.*, 302 Ill. App. 3d 33, 38-39 (1998) (finding no jurisdiction under Rule 307(a)(1) and dismissing appeal of decision to modify protective order related to child custody terms as it was not an interlocutory order granting an injunction); *In re Marriage of Kitchen*, 126 Ill. App. 3d 192, 195 (1984) (same,

12

finding that trial court's order of contempt in light of father's violation of custody order was not an injunction conferring appellate jurisdiction pursuant to Rule 307(a)(1)).

¶ 24 The situation in the instant cause mirrors what occurred in *Eckersall* and, consequently, our decision is necessarily clear. As it did in that case, the (same) "experienced" trial court here (*Eckersall*, 2014 IL App (1st) 132223, ¶ 20) issued an order for the sake of the children and in light of the particular circumstances emerging in the litigation, mandating that Kenton and Marissa oversee the deletion of their social media posts related to the litigation and to instruct them not to make any future such posts. This order set terms and conditions on the custody requirements of a parent and step-parent. It did not grant any form of injunctive relief under Rule 307(a)(1). Accordingly, and per *Eckersall*, as the trial court's order was only ministerial and did not adjudicate any substantive issues involved in the litigation, we do not have jurisdiction to address this appeal.

¶ 25 CONCLUSION

¶ 26 For the foregoing reasons, we lack jurisdiction over this cause and must dismiss the instant appeal.

¶ 27 Appeal dismissed.